UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE CHARITABLE DONOR ADVISED FUND, L.P.<br><br>   *Plaintiff*,<br><br>  v.<br><br>U.S. BANK NATIONAL ASSOCIATION,<br><br>   *Defendant*. | **CASE NO.: 1:19-cv-9857**<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT** |

TO THE HONORABLE COURT:

  Plaintiff The Charitable Donor Advised Fund, L.P. ("The Charitable DAF"), by and through its attorneys of record, files this Original Complaint against Defendant U.S. Bank National Association ("U.S. Bank"), and in support thereof, respectfully states and alleges as follows:

## NATURE OF LAWSUIT

  The Charitable DAF files this lawsuit to enforce and protect its rights. U.S. Bank, which serves as Trustee of certain indentures, has severely compromised The Charitable DAF's rights thereunder through its misconduct and failure to act. The Charitable DAF, a Holder of Secured Notes under those ACIS indentures, possesses beneficial interests in the collateral that U.S. Bank has mismanaged and failed to protect. U.S. Bank's wrongful and negligent conduct has diluted the value of The Charitable DAF's Secured Notes, deteriorated the credit profile of the collateralized loan obligations ("CLOs"), and caused The Charitable DAF to incur other direct damages. To protect its rights, The Charitable DAF seeks two things through this lawsuit.

*First*, it seeks to recover the losses it sustained in connection with U.S. Bank's negligence and breach of its extra-contractual duties to The Charitable DAF, including the duties to perform all basic, non-discretionary, ministerial tasks with due care, and to avoid conflicts of interest.

*Second*, The Charitable DAF seeks judicial intervention to protect its interests before U.S. Bank commits or facilitates any further wrongful conduct. The Charitable DAF cannot allow U.S. Bank to continue to shirk its duties as indenture Trustee.

## PARTIES

1.  Plaintiff The Charitable Donor Advised Fund, L.P. is a limited partnership, with its principal place of business at Intertrust Corporate Services (Cayman) Limited, 190 Elgin Avenue, George Town, Grand Cayman KY1-9005, Cayman Islands.

2.  Defendant U.S. Bank National Association is a national banking association that is Trustee of the ACIS Indentures, as defined further herein. Pursuant to the ACIS Indentures, Defendant U.S. Bank may be served at its corporate office located at 190 South LaSalle Street, 8th Floor, Chicago, IL 60603.

## JURISDICTION AND VENUE

3.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of a State and a citizen of a foreign state.

4.  Jurisdiction and venue are proper in this District because, pursuant to Section 14.10 of the ACIS Indentures, as defined further herein, each party to such indentures, including U.S. Bank:

> [H]ereby irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of . . . the United States

> District Court of the Southern District of New York . . . in any action or proceeding arising out of or relating to the notes or th[ese] indenture[s] . . .

5. Venue is also proper because U.S. Bank waived any objection to venue in this District under the ACIS Indentures, as defined further herein. Section 14.10 specifically provides that:

> Each of the parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to th[ese] indenture[s] in any court referred to in the previous paragraph. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

6. New York law governs the claims in this lawsuit.

## STATEMENT OF FACTS

### A. U.S. Bank is Trustee of certain ACIS collateralized loan obligations.

7. Between 2014 and 2015, U.S. Bank agreed to serve as the Trustee of three indentures governing CLOs to which The Charitable DAF holds beneficial interests as a Holder of Secured Notes, including: (i) the Indenture dated June 5, 2014 among ACIS CLO 2014-4 LTD., as Issuer, ACIS CLO 2014-4 LLC, as Co-Issuer, and U.S. Bank as Trustee ("Indenture 4"); (ii) the Indenture dated November 18, 2014 among ACIS CLO 2014-5 LTD., as Issuer, ACIS CLO 2014-5 LLC, as Co-Issuer, and U.S. Bank as Trustee ("Indenture 5"); and (iii) the Indenture dated April 16, 2015 among ACIS CLO 2015-6 LTD., as Issuer, ACIS CLO 2015-6 LLC as Co-Issuer, and U.S. Bank as Trustee ("Indenture 6", and together with Indenture 4 and Indenture 5, the "ACIS Indentures"). The ACIS Indentures impose a number of obligations on U.S. Bank in connection with its role as Trustee.

8. *First,* the ACIS Indentures provide that U.S. Bank shall hold in trust, for the "benefit and security" of the noteholders, all "Collateral Obligations" that secure the Co-Issuers' financial obligations to the noteholders. In connection therewith, the ACIS Indentures also provide that, for future purchases and sales of collateral obligations, the Trustee shall only consummate these transactions where certain investment criteria are satisfied. One such criterion is that, for all purchases, "either (A) each requirement . . . of the . . . Collateral Quality Test will be satisfied or (B) if any such requirement or test was not satisfied immediately prior to such reinvestment, such requirement or test will be maintained or improved after giving effect to the reinvestment." *See, e.g.*, Indenture 4 § 12.2(a)(iv). The ACIS Indentures define "Collateral Quality Test" as:

> A test satisfied if, as of any date of determination . . . in the aggregate, the Collateral Obligations owned (or, for purposes of *pro forma* calculations in relation to a proposed purchase of a Collateral Obligation, proposed to be owned) by the Issuer satisfy . . . the Maximum Moody's Rating Factor Test . . . [and the] Weighted Average Life Test.

*Id*. at 15.

9. These tests are defined, in turn, as follows:

> "Maximum Moody's Rating Factor Test": The test that will be satisfied on any date of determination if the Weighted Average Adjusted Moody's Rating Factor[1] of the Collateral Obligations is

---

[1] "Weighted Average Adjusted Moody's Rating Factor" means "[a]s of any date of determination, a number equal to the Weighted Average Moody's Rating Factor determined in the following manner: for purposes of this definition, the last paragraph of the definition of "Moody's Default Probability Rating," the second to last paragraph of the definition of "Moody's Rating" and the last paragraph of the definition of "Moody's Derived Rating" will be disregarded, and instead each applicable rating on credit watch by Moody's that is on (a) positive watch will be treated as having been updated by one rating subcategory, (b) negative watch will be treated as having been downgraded by two rating subcategories and (c) negative outlook will be treated as having been downgraded by one rating subcategory. *See, e.g.*, Indenture 4 at 66.

"Weighted Average Moody's Rating Factor" means "[t]he number (rounded up to the nearest whole number) equal to: (i) the sum of the products of (a) the Principal Balance of each Collateral Obligation (excluding Equity Securities) multiplied by (b) the Moody's Rating Factor of such Collateral Obligation, divided by (ii) the Aggregate Principal Balance of all such Collateral Obligations." *Id*.

> less than or equal to the number set forth in the column entitled "Maximum Weighted Average Moody's Rating Factor" in the Moody's Asset Quality Matrix, based upon the applicable "row/column combination" chosen by the Portfolio Manager with notice to the Collateral Administrator . . . plus the Rating Factor Adjustment Amount.
>
> "<u>Weighted Average Life Test</u>": A test that is satisfied if the Aggregate Weighted Average Life[2] on such date of determination is not later than June 5, 2022.

*See, e.g.*, Indenture 4 at 37-38, 66.

10. These provisions seek to maintain the integrity of the collateral securing the Co-Issuers' obligations by requiring certain parties, including the Trustee, to ensure that any purchase or sale of such collateral complies with detailed, industry-recognized, and bargained-for tests.

11. *Second*, the ACIS Indentures provide that, in performing its duties as Trustee, U.S. Bank may not "authorize or consent to or vote for or accept or adopt on behalf of any Secured Noteholders, any plan of reorganization, arrangement, adjustment or composition affecting the Secured Notes or any Holder thereof".  Like the provisions concerning collateral quality, these provisions also seek to ensure that the Trustee does not prejudice the rights of any secured noteholder under the ACIS Indentures, like The Charitable DAF.

12. The ACIS Indentures do more than require that U.S. Bank observe certain safeguards – they also grant U.S. Bank the broad power to "execute any of the trusts or powers

---

[2] "Aggregate Weighted Average Life" means "[w]ith respect to all Collateral Obligations as of any date of determination is a date equal to (a) the number of years following such date obtained by (i) *summing* the products obtained by *multiplying* the Weighted Average Life at such time of each Collateral Obligation *by* the Principal Balance at such time of such Collateral Obligation and (ii) *dividing* such sum *by* the Aggregate Principal Balance at such tie of all Collateral Obligations *plus* (B) such date of determination. *Id*. at 6.

hereunder or perform any duties hereunder either directly or by or through agents, nominees, custodians, or attorneys".

### ii. *U.S. Bank must also satisfy extra-contractual obligations owed to The Charitable DAF.*

13. U.S. Bank must satisfy certain extra-contractual obligations in connection with its role as Trustee, and the broad powers associated therewith. These pre-default extra-contractual obligations include the duty to perform all basic, non-discretionary, ministerial tasks with due care, and to avoid conflicts of interest.

14. For example, U.S. Bank was required to perform all basic, non-discretionary, ministerial tasks with due care, including, but not limited to, the following extra-contractual tasks: reserving noteholder rights impacted by active litigation, such as bankruptcy proceedings; exercising due care in connection with the payment of expenses; collecting and distributing the interest and dividends due on the portfolio securities; and providing noteholders with periodic reports concerning the interest received, amounts distributed and securities in the portfolio.

15. Notably, no provisions of the ACIS Indentures "shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct".

**B. U.S. Bank fails to reserve or otherwise protect The Charitable DAF's rights in connection with bankruptcy proceedings.**

16. The Charitable DAF's rights as a secured noteholder under the ACIS Indentures have been compromised by certain proceedings and judicial rulings in a consolidated Chapter 11 bankruptcy proceeding, and related adversary proceeding, pending before the United States

Bankruptcy Court for the Northern District of Texas, jointly administered under case number 18-30264-SGJ-11 (the "Bankruptcy Proceeding").[3]

17. On July 29, 2018, the Chapter 11 Trustee in the Bankruptcy Proceeding filed a First Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management, GP, LLC (the "First Amended Plan").

18. The First Amended Plan provided for certain amendments to the ACIS Indentures that would be effected through a certain Plan B and Plan C. These proposals concerned, among other things, re-writing the ACIS Indentures to protect Acis' management fee stream for several years.

19. In full recognition that the First Amended Plan encroached on the rights of noteholders under the ACIS Indentures like The Charitable DAF, the Trustee filed a Reservation of Rights and Limited Objections to the First Amended Plan in the Bankruptcy Proceeding. The Trustee took prompt measures to protect noteholder rights, filing these pleadings only fifteen days after the filing of the First Amended Plan.

20. Among other infringements on the rights of noteholders under the ACIS Indentures, the Trustee explained that: "In other words, both Plan B and Plan C purport to ignore the express terms of the Indenture and the rights of the Noteholders with respect to amending the Indenture."[4]

---

[3] The two case numbers in the consolidated Bankruptcy Proceeding include case numbers 18-30264-SGJ-11 and 18-30265-SGJ-11.

[4] *See* Bankruptcy Proceeding, case number 18-30264-SGJ-11 at Dkt. Nos. 500, 501, and 500; *see id.* at Dkt. No. 505.

21. On January 31, 2019, a Third Amended Joint Plan for Acis Capital Management, L.P. and Acis Capital Management GP, LLC was entered in the Bankruptcy Proceeding ("Plan D").

22. Like Plan B and C, Plan D also substantially impacted the rights of noteholders under the ACIS Indentures, including The Charitable DAF.

23. Among other infringements, Plan D imposes an injunction that adversely affects The Charitable DAF's rights by prohibiting beneficial trading activity that would serve to protect noteholder interests.

24. In addition to other restrictions, Plan D impedes the ability of noteholders under the ACIS Indentures to make optional redemptions, which restriction has decimated the value of such investments across the capital stack of each CLO covered by the ACIS Indentures.

25. Moreover, Plan D conflicts with the express terms of the ACIS Indentures. Specifically, the ACIS Indentures do not permit U.S. Bank to "authorize or consent to or vote for or accept or adopt on behalf of any Secured Noteholders, **any plan** of reorganization, arrangement, adjustment or composition **affecting the Secured Notes or any Holder thereof**". (emphases added).

26. Tellingly, in its Reservation of Rights filed in 2018, U.S. Bank acknowledged that the specific plans "adversely affect[ed] the rights of Noteholders."[5] The same holds true for Plan D.

27. Notwithstanding its ability to do so, U.S. Bank did not reserve any noteholders' rights, or otherwise object to the entry of Plan D.

---

[5] *See e.g.,* Bankruptcy Proceeding at Dkt. No. 505 ¶ 3; *see also,* Bankruptcy Proceeding at Dkt. Nos. 499-505

28. Instead, as noted by the court's ruling approving confirmation of Plan D on January 31, 2019, "[t]he indenture trustee has retained and appeared through its own separate counsel during the Chapter 11 Bankruptcy Cases **and is not currently objecting to the Plan**."[6] (emphasis added).

29. U.S. Bank's election to take no action regarding the entry of Plan D amplified the exposure of The Charitable DAF and the overall risk that it faces during the pendency of the Plan D injunction. Though U.S. Bank has a duty to avoid conflicts of interest, its election to take no action regarding the entry of Plan D underscores the Trustee's self-serving conduct.

C. **U.S. Bank fails to ensure that certain transactions satisfy the collateral quality tests.**

30. As set forth above, U.S. Bank must ensure that every purchase made under the ACIS Indentures satisfies the collateral quality tests, including the Weighted Average Life Test ("WAL test") and the Minimum Weighted Average Moody's Recovery Rate Test ("WAM test"), or maintains or improves any failing collateral quality tests. U.S. Bank failed to satisfy these obligations in at least two ways.

31. *First*, U.S. Bank allowed the "Portfolio Manager" under the ACIS Indentures to effectuate certain transactions that did not satisfy the WAL test or maintain or improve such failing WAL test. Specifically, U.S. Bank allowed the Portfolio Manager to make multiple same-day trades and to consolidate the weighted average maturity date for these trades. In so doing, U.S. Bank permitted the Portfolio Manager to create the false appearance of a maintained or improved

---

[6] *See e.g.,* Bankruptcy Proceeding, case number 18-30264-SGJ-11 at Dkt. No. 827 p. 5.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                 **PAGE 9**

WAL test. Absent this consolidation, the same-day purchases could not have maintained or improved the failing WAL tests on individual bases.

32.     The value destruction of this forced "bunched trading" is clear when one compares the prices at trade date against the prices from the previous day. For example:

| CLO | Trade | Issuer | Commitment | Date | Trade Px | Day Before | Close Mid Price | 2 Day Before | Close Mid Price | Change | P&L |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CLO 4 | Purchase | Diebold Inc - Diebold DD T/L A | 2,430,000.00 | 3/15/2019 | 98.00 | 3/14/2019 | 94.50 | 3/13/2019 | 94.5 | -3.50 | (85,050.00) |
| CLO 6 | Purchase | Diebold Inc - Diebold DD T/L A | 1,578,541.42 | 3/26/2019 | 99.00 | 3/25/2019 | 95.50 | 3/22/2019 | 95.5 | -3.50 | (55,248.95) |
| CLO 4 | Purchase | Diebold Nixdorf Incorporated - Diebold T/L B New Dollar | 4,985,751.99 | 5/23/2019 | 96.75 | 5/22/2019 | 95.75 | 5/21/2019 | 95.75 | -1.00 | (49,857.52) |
| CLO 5 | Purchase | Diebold Nixdorf Incorporated - Diebold T/L B New Dollar | 4,985,751.99 | 5/23/2019 | 96.75 | 5/22/2019 | 95.75 | 5/21/2019 | 95.75 | -1.00 | (49,857.52) |
| CLO 4 | Purchase | Air Medical Group Holdings Inc - Air Medical T/L B | 2,200,000.00 | 1/8/2019 | 96.50 | 1/7/2019 | 94.45 | 1/4/2019 | 93.839 | -2.05 | (45,177.00) |
| CLO 3 | Purchase | MA FinanceCo LLC - MA FinanceCo T/L B2 | 2,000,000.00 | 1/7/2019 | 98.50 | 1/4/2019 | 96.63 | 1/3/2019 | 96 | -1.88 | (37,500.00) |
| CLO 6 | Purchase | Team Health Holdings Inc - Team Health Holdings T/L | 1,279,236.64 | 3/26/2019 | 88.50 | 3/25/2019 | 86.13 | 3/22/2019 | 86.9375 | -2.38 | (30,381.87) |

33.     What is more, this artificial trading philosophy, disguised as "responsible management," has resulted in myriad poorly conceived and timed buys, which positions have plummeted, destroying value for the investors. For example:

| Issuer | Buy/Sell | Row Labels | Sum of 8/2/19 P&L | Cost | 8/2/19 Mark |
|---|---|---|---|---|---|
| Lumileds Holding | Buy | LX171142 | (3,603,604.17) | 99.00 | 61.60 |
| Libbey Glass | Buy | LX136370 | (2,773,860.00) | 99.29 | 77.40 |
| KCA Deutag UK Finance PL | Buy | LX172320 | (1,172,068.16) | 84.89 | 69.58 |
| Doncasters | Buy | LX128948 | (1,532,695.82) | 95.51 | 75.00 |
| Envision Healthcare | Buy | LX175867 | (1,172,343.58) | 94.14 | 85.30 |

34.     The transaction history of the ACIS Indentures makes clear that U.S. Bank appreciates the import of trading on specific days. In connection with one such indenture, U.S. Bank authorized the purchase of a term loan in Capital Automotive 1st Lien with a maturity date of March 25, 2024. But, to maintain or improve the WAL test for this indenture, U.S. Bank should

have required the CLOs to purchase assets with a maturity date of April 4, 2023 or earlier. U.S. Bank facilitated similar misconduct across the ACIS Indentures.

35. ***Second***, the Weighted Average Moody's Rating Factor" ("WARF") a factor on which the WAM test turns, has steadily increased this year for each portfolio of the ACIS Indentures.

36. U.S. Bank turned a blind eye to The Charitable DAF's collateral quality, which has suffered under Plan D's new management. Plan D, which was implemented in the Bankruptcy Proceeding on January 31, 2019, appointed Brigade Capital Management, LP ("Brigade") to perform certain services related to the ACIS Indentures, previously performed by Highland Capital Management, L.P.[7]

37. Since the entry of Plan D, and Brigade's "management" of the ACIS Indentures, U.S. Bank has allowed the collective Weighted Average Moody's Rating Factor" ("WARF") of the portfolios to become one of the dirtiest pools in the market in a matter of months. As of October 2019, and since Brigade's involvement with the ACIS Indentures, the WARF of each such indenture has dramatically increased, as follows:

```
CLO 4:    2680  →  2941
CLO 5:    2673  →  3004
CLO 6:    2627  →  2917
```

38. U.S. Bank is not excused from failing to protect The Charitable DAF's rights affected by Plan D or by the Bankruptcy Proceeding generally.

---

[7] *See* Case No. 18-30264-SGJ-11 and Case No. 18-30265-SGJ-1, Jointly Administered Under Case No. 18-30264-SGJ-11), referred to herein as the Adversary Proceeding.

### D. **U.S. Bank's conduct has damaged The Charitable DAF, substantially.**

39. U.S. Bank's conduct, described herein, has resulted in myriad damage to The Charitable DAF, including, but not limited to, the following.

40. U.S. Bank's failure to ensure that transactions under the ACIS Indentures comply with the collateral quality tests set forth therein constitute violations of U.S. Bank's contractual and extra-contractual obligations to The Charitable DAF. By facilitating extensive portfolio mismanagement, U.S. Bank has further violated its contractual and extra-contractual obligations to The Charitable DAF. These violations have compromised, among other things, the credit profile of the ACIS Indentures and the value of The Charitable DAF's secured notes thereunder.

41. Under its watch, since the appointment of Brigade, U.S. Bank has allowed the ACIS Indentures to incur exorbitant fees which have diminished the equity that The Charitable DAF owns indirectly pursuant to the ACIS Indentures. Specifically, because of the payment of uncharacteristically high fees, equity holders under certain ACIS Indentures have received **zero** cash flows.

42. Further, as Trustee, U.S. Bank owed a duty to The Charitable DAF to avoid conflicts of interest. It shirked this duty by, among other things, facilitating trades that did not comply with the collateral test in order to artificially maximize certain management fees. Likewise, despite U.S. Bank's duty to avoid conflicts of interest, in failing to object or otherwise reserve **any** noteholder rights impacted by Plan D, U.S. Bank further demonstrated its inability to prioritize or protect the rights of noteholder The Charitable DAF.

## COUNT I: BREACH OF THE DUTY TO PERFORM ALL BASIC, NON-DISCRETIONARY, MINISTERIAL TASKS WITH DUE CARE

43. The Charitable DAF hereby alleges and incorporates the preceding allegations as if fully set forth herein.

44. As Trustee, U.S. Bank has an extra-contractual duty to perform all basic, non-discretionary, ministerial tasks under the ACIS Indentures with due care. This duty subjects U.S. Bank to tort liability.

45. U.S. Bank breached this duty in at least two ways.

46. First, it breached this duty by permitting the ACIS Indentures to incur exorbitant expenses, which have diminished the equity that The Charitable DAF owns indirectly pursuant to the ACIS Indentures.

47. Second, U.S. Bank breached its duty by negligently failing to act, and by accepting the entry of "Plan D" in the Bankruptcy Proceeding, which directly affects the secured noteholders. Among other things, Plan D adversely impacts the rights of The Charitable DAF by imposing an injunction that prohibits beneficial trading activity, and impeding the ability of noteholders to make optional redemptions.

48. U.S. Bank's omission to act was not in good faith. In 2018, U.S. Bank filed multiple pleadings in the Bankruptcy Proceeding, including, but not limited to, a Reservation of Rights, and Limited Objections to the entry of the predecessor plans to Plan D. U.S. Bank failed to take any action whatsoever in regard to Plan D.

49. These breaches were the proximate cause of damages to Charitable DAF.

50. Based on investigation to date, such damages include, but are not limited to, The Charitable DAF's inability to make certain trades or redemptions, which restriction has decreased the value of The Charitable DAF's investment across the capital stack of each contract. They also include the diminished value of the collateral securing the issuer and co-issuer's financial obligations to The Charitable DAF. U.S. Bank's failure to reserve or otherwise protect The Charitable DAF's rights impacted by the Bankruptcy Proceeding has caused it to suffer damages.

## COUNT II: BREACH OF THE DUTY TO AVOID CONFLICTS OF INTEREST

51. The Charitable DAF hereby alleges and incorporates the preceding allegations as if fully set forth herein.

52. As Trustee, U.S. Bank has an extra-contractual duty to avoid conflicts of interest. This duty subjects U.S. Bank to tort liability.

53. Under this duty, U.S. Bank is prohibited from advancing its own interests at the expense of The Charitable DAF.

54. U.S. Bank breached this duty by, among other things, facilitating extensive portfolio mismanagement and failing to ensure compliance with the collateral quality tests in order to artificially maximize management fees. Such facilitation of noncompliant trades gives rise to an inference of bad faith.

55. U.S. Bank also breached this duty by allowing the ACIS Indentures to incur exorbitant fees which have diminished the equity that The Charitable DAF owns indirectly pursuant to the ACIS Indentures.

56. U.S. Bank's breaches were the proximate cause of damages to The Charitable DAF.

57. These breaches were the proximate cause of damages to Charitable DAF.

58. Based on investigation to date, such damages include, but are not limited to, the diminished value of the collateral securing the issuer and co-issuer's financial obligations to Charitable DAF.

59. U.S. Bank's breaches, set forth herein, have damaged The Charitable DAF in not less than $5,000,000.00.

## CONDITIONS PRECEDENT

60. Pursuant to Federal Rule of Civil Procedure 9(c), Charitable DAF hereby pleads that all conditions precedent have occurred or been performed. Although the ACIS Indentures contain "no-action" clauses that require certain noteholders to make written request to U.S. Bank to institute any judicial proceedings in its own name, the Second Circuit has held that noncompliance with a no-action provision is excused in a suit against the indenture trustee. *See Cruden v. Bank of New York*, 957 F.2d 961, 968 (2d Cir. 1992) ("The district court held that the 'no action' clause applied only to the debenture holder suits against [the issuer], not the Indenture Trustees . . . This construction of [the limitation on suits provision] obviously is correct, as it would be absurd to require the debenture holders to ask the Trustee to sue itself.").

## DEMAND FOR ATTORNEYS' FEES

61. Pursuant to Section 5.15 of the ACIS Indentures, Charitable DAF hereby makes a demand for the attorneys' fees and court costs it has sustained in bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff The Charitable Donor Advised Fund, L.P. respectfully requests that judgment be entered in its favor and against Defendant U.S. Bank, and as follows:

A. An award of damages sustained as a result of U.S. Bank National Association's activities in not less than $5,000,000.00;

B. An award of reasonable attorneys' fees and court costs;

C. An award of pre-judgment and post-judgment interest on all sums awarded; and

D. For such other and further relief as the Court may deem just, equitable and appropriate.

DATED: October 24, 2019

Respectfully submitted,

*/s/ Chisara Ezie-Boncoeur*
Michael K. Hurst (*pro hac admission pending*)
Texas State Bar No. 10316310
mhurst@lynnllp.com
V. Chisara Ezie-Boncoeur
New York Bar No. 5333224
cezie-boncoeur@lynnllp.com
John R. Christian (*pro hac admission pending*)
Texas State Bar No. 24109727
jchristian@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR THE CHARITABLE DONOR ADVISED FUND, L.P.**